**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-20154
Summary Calendar
_____


In The Matter Of:
MARY THERESA RAMIREZ RODRIGUEZ;
T.R. NETWORK COMPANIES, INC.;
T.R. FINANCIAL SERVICES, U.S., INC.;
and AMICUS COMPUTER SYSTEMS, INC.,

Debtors.

SSSSSSSSSSSSSSSSSSSSSSSSSSS

JAMES C. SHINDLER and BETTY SHINDLER,

Appellants,

VERSUS

BEN B. FLOYD, TRUSTEE,

Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CA-H-95-926)
_____

August 2, 1996

Before GARWOOD, SMITH, and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R.47.5.4.

The Shindlers appeal a judgment affirming a bankruptcy court's grant of summary judgment against them in this action to recover a preferential transfer.  We affirm.

I.

Trustee Ben B. Floyd instituted an adversary proceeding against James C. and Betty Shindler to avoid a preferential transfer allegedly made to them by Mary Theresa Ramirez Rodriguez, one of the debtors in the underlying bankruptcy.  The Shindlers chose not to file a proof of claim in the bankruptcy court and instead timely demanded a jury trial.

The bankruptcy court granted summary judgment to the trustee.  In doing so, the court concluded from undisputed factsSSand the expert opinion of an accountantSSthat Rodriguez had been operating a Ponzi scheme.  The Shindlers appealed to the district court, which affirmed the bankruptcy court's judgment under *de novo* review.

Most of the Shindlers' arguments center on whether summary judgment was properly granted.  They also make Seventh Amendment and Article III challenges, arguing that they were entitled to a jury trial before an Article III court.  We turn to the summary judgment arguments first, as their resolution simplifies the resolution of the constitutional issues.

2

## II.

We review a summary judgment *de novo*. *Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Hanks*, 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material. *King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *Id.* If the non-movant sets forth specific facts in support of allegations essential to his case, a genuine issue is presented. *Celotex*, 477 U.S. at 327.

## III.

3

The Shindlers challenge the affidavit provided by an accountant, Jesse N. Collier, as part of the trustee's summary judgment evidence. They do not challenge, however, challenge the substance of Collier's affidavitSSwhich includes, *inter alia*, the opinion that Rodriguez was running a Ponzi scheme. Rather, they attack only the foundation for the affidavit. The Schindlers have not adduced evidence showing that Rodriguez was *not* running a Ponzi schemeSS*i.e.*, they have not set forth specific facts showing that the existence *vel non* of the Ponzi scheme is a genuine issue of material fact.

As both lower courts correctly concluded, Collier was well qualified to render an expert opinion under FED. R. EVID. 702. His review of the debtors' records was sufficiently comprehensive for him to ascertain the underlying structure of a Ponzi scheme. His statement that the debtors were operating such a scheme was a further description of that underlying structure, not a legal conclusion.

The fact that Collier relied on work performed by his subordinates, without more, does not defeat this conclusion. As we have stated:

> While testimony based on the personal observations of the expert is preferable, neither the rules nor our cases have insisted on personal examinations. The reports and statements of others such as doctors, nurses, or medical personnel, while not as valuable as testimony based on the expert's own observations, can provide a reliable basis for the expert's opinion, at least when reliance on such sources is the custom of the discipline.

4

*Christophersen v. Allied-Signal Corp.*, 939 F.2d 1106, 1110-11 (5th Cir. 1991) (en banc) (per curiam) (footnote omitted), *cert. denied*, 503 U.S. 912 (1992).[1]  Partners at law firms rely on the work of associates without double-checking their research.  On the basis of such research, those partners give legal advice to their clients on decisions.  Similarly, partners at accounting firms rely on calculations and analysis performed by their subordinates in advising their clients.

The Shindlers have not set forth a specific reason to doubt the reasonableness of the particular facts and data upon which Collier relied, including the particular work performed by his subordinates.[2]  We conclude, therefore, that Collier's affidavit relied on evidence of the type reasonably relied upon by accounting experts in forming opinions or inferences on financial transactions.  His affidavit was admissible under FED. R. EVID. 703.[3]

---

[1] *Christophersen* was abrogated in part on other grounds by *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), which held that the Federal Rules of Evidence had superseded the "general acceptance" test for determining the admissibility of expert scientific testimony, a test first announced in *Frye v. United States*, 293 F. 1013, 1014 (D.C. 1923).

[2] The Shindlers do not argue that Collier merely parroted the conclusions of his subordinates.  Consequently, we express no opinion on that issue.

[3] The key cases relied upon by the Shindlers to support their challenge to Collier's affidavit are inapposite.  For example, *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 727-29 (6th Cir. 1994), involved a situation where the district court had admitted, under rule 703, the otherwise inadmissible materials upon which the expert in that case had relied.  The Sixth Circuit held that it was improper to admit those materials under rules 702 and 703, not that the expert opinion itself was inadmissible.  *See id.* at 728-29.  In the case before us, the Shindlers argue that the bankruptcy court erroneously relied on Collier's opinion, not that it erroneously relied on the materials underlying

(continued...)

5

The Shindlers argue that the trustee was required specifically to plead the existence of a Ponzi scheme as an element of his case. The trustee brought an action to recover a preferential transfer under 11 U.S.C. § 547(b). The existence of a Ponzi scheme is not an element of that cause of action. *See* 11 U.S.C. § 547(b) (1993). The characterization of the underlying transactions in this case as a Ponzi scheme is precisely that: a descriptive characterization, nothing more. The Shindlers do not argue that the trustee has otherwise failed to plead the elements of a § 547(b) action.

---

[3](...continued)
that opinion.

In *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984), the court held that otherwise inadmissible materials relied on by an expert are admissible, under rule 703, only to provide a basis for the expert's opinion, not to prove the truth of the matters contained in the materials. *See also Engebretsen*, 21 F.3d at 728 (citing *Paddack*). The materials underlying Collier's opinion were admitted only in order to explain the basis of that opinion. The bankruptcy court relied on Collier's opinion to conclude that Rodriguez had been running a Ponzi scheme.

*Pelster v. Ray*, 987 F.2d 514 (8th Cir. 1993), is even further afield than the other cases cited by the Shindlers. The district court had never qualified the witness at issue as an expert. *Id*. at 526. The Eighth Circuit, after noting this threshold problem, further opined in *dictum* that the witness's testimony would have been inadmissible as expert testimony anyway, because he was testifying as to matters well within the understanding of lay jurors. *See id*. ("[A]ny lay person has the ability to compare the odometer readings on two titles, odometer statements, or check-in sheets and decide whether and when the vehicle's odometer had been rolled back.").

Finally, *Vidrine v. Enger*, 752 F.2d 107, 109-10 (5th Cir. 1984) (per curiam), is inapposite, because it involved an attempt by the plaintiff, a lay deponent, to introduce, by hearsay, the opinion of an expert. This is patently distinct from a situation where an expert provides his own opinion. In *Vidrine*, FED. R. EVID. 802 barred the testimony of the lay deponent. In the case before us, rule 703 permitted the expert, Collier, to rely on inadmissible evidence in forming his opinion.

V.

The Shindlers aver that there is a genuine issue of material fact as to whether the preferential transfer was made in the "ordinary course of business," which is an affirmative defense to a § 547(b) action.  *See* 11 U.S.C. § 547(c)(2) (1993).  This defense, however, is unavailable as a matter of law where, as here, the transfer was made in furtherance of a Ponzi scheme.  *See Wider v. Wooton*, 907 F.2d 570, 572-73 (5th Cir. 1990).

VI.

The Shindlers argue that the trustee failed to put forth any evidence proving that $82,151.60 of the preferential transfer was paid by one of the debtors.  That amount was paid out of a bank account in the name of T&T Investments, a third-party non-debtor, and the legal issue presented is whether that amount was earmarked for the Shindlers.

In determining whether the earmarking doctrine applies to the $82,151.60, it is critical to determine who had control over the source of the funds (the bank account).  *Hansen v. MacDonald Meat Co.* (*In re Kemp Pacific Fisheries*), 16 F.3d 313, 316 (9th Cir. 1994) (per curiam)*; see Coral Petroleum v. Banque Paribas-London*, 797 F.2d 1351, 1358 (5th Cir. 1986) (characterizing the issue of control of funds as key to resolution of earmarking dispute).  The trustee presented two affidavits on this point.  The first of these

7

was Collier's affidavit, which established that certain individuals——*i.e.*, other investors in the Ponzi scheme——had made payments to the bank account of T&T Investments prior to the preferential transfer. Furthermore, Collier's affidavit established that those payments were transfers made to Rodriguez pursuant to the base participation contracts and subcontracts that executed the Ponzi scheme. The affidavit also established that, once Rodriguez received funds from investors, she commingled them in various bank accounts, none of which was segregated or treated as a trust account.

The trustee also offered the affidavit of W. Patrick Collins, who was employed by Rodriguez or her companies at the time the preferential transfer occurred. Collins's affidavit established that he made wire transfers to the Shindlers from T&T Investments' bank account, which he characterized as being controlled by his employer, Rodriguez. Collins's affidavit further established that the funds he transferred were funds that had been delivered to the bank account by other investors.

Taking both affidavits together, we agree with the district court that the trustee has demonstrated that the $82,151.60 in dispute was taken from commingled investor funds and that Rodriguez had control over those funds.[4] Thus, the earmarking doctrine does

---

[4] Thus, we do not need to decide——and we express no opinion regarding——whether earmarking is an affirmative defense that the Shindlers were required to plead, or whether it is a denial of the first element of a § 547(b)

(continued...)

not apply to those funds.

## VII.

Citing 11 U.S.C. § 547(c)(4), the Shindlers argue that they gave new value to Rodriguez by executing subcontracts with Rodriguez after the preferential payment was made.  The Shindlers, however, never established that they actually paid money to Rodriguez; rather, they only executed the subcontracts, thereby agreeing to invest money in Rodriguez's venture.  Merely executing a subcontract without making a related payment—*i.e.*, merely agreeing to invest money—is not the same as (1) giving money or money's worth in goods, services, or new credit or (2) releasing property as defined in § 547(a)(2).  *Cf.* 11 U.S.C. § 547(a)(2) (1993) (defining new value).

## VIII.

Finally, the Shindlers contend that the bankruptcy court and the district court violated their Article III right to adjudication by an Article III court and their Seventh Amendment right to a jury.  The test for deciding whether a party has a right to an Article III adjudication is the same as the test for deciding whether a party has a right to a jury trial under the Seventh

---

[4](...continued)
action, which requires that the allegedly preferential transfer be "an interest of the debtor in property."  11 U.S.C. § 547(b).

9

Amendment.  *McFarland v. Leyh (In re Texas Gen. Petroleum Corp.)*, 52 F.3d 1330, 1336 (5th Cir. 1995) (decided by quorum).  An action brought by a trustee in bankruptcy to recover a preferential payment is one to which Article III and the Seventh Amendment apply.  *See In re Jensen*, 946 F.2d 369, 373-74 (5th Cir. 1991) (interpreting *Schoenthal v. Irving Trust Co.*, 287 U.S. 92 (1932), as "holding that a suit by a trustee in bankruptcy to recover preferential payments on behalf of the estate should be tried before a jury").

The Shindlers' right to an Article III adjudication was vindicated.  In core proceedings under title 11§§including actions to recover a preference, *see* 28 U.S.C. § 157(b)(2)(F) (1993)§§a bankruptcy court may enter final orders and judgments.  28 U.S.C. § 157(b)(1) (1993); *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1421 (5th Cir. 1995).  The bankruptcy court in this case acted as an adjunct to the district court, a role consistent with Article III.  *See McFarland*, 52 F.3d at 1337.  The bankruptcy court ruled in favor of the trustee on his pretrial motion for summary judgment.  The district court reviewed the grant of summary judgment *de novo*, thus maintaining Article III control over the adjunct.  *See id.*  In other words, the district court, as required, "retain[ed] the essential attributes of judicial power."  *Id.*

The Shindlers' right to a Seventh Amendment jury trial was also not violated.  This right does not apply where a litigant

cannot survive pretrial motions for judgment as a matter of law.[5] In other words, "[n]o right to a jury trial arises if no jury issue is presented to the court." *Id.* at 1339. A contrary holding would necessarily imply that summary judgment procedures, including FED. R. CIV. P. 56, are unconstitutional. Such a holding would be beyond the pale: "Summary judgment is not unconstitutional; where there are no disputed issues of material fact for a jury to decide, no jury is necessary." *King v. Fidelity Nat'l Bank*, 712 F.2d 188, 192 (5th Cir. 1983) (per curiam), *cert. denied*, 465 U.S. 1029 (1984).

Thus, the Shindlers' complaints of constitutional violations are without merit, as are their other arguments. Accordingly, we AFFIRM.

---

[5] The Seventh Amendment right to a jury trial does apply if a party can survive summary judgment by presenting a genuine issue of material fact. Thus, our conclusion that summary judgment was properly granted here forecloses the possibility that the Shindlers' Seventh Amendment right to a jury trial was violated.